IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Paul A. Smith, ) | |
| ) | Civil Action No.  9:10-cv-02282-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Hargray Communications Group, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 20.]  In his Complaint, the plaintiff alleges that the defendant denied him a severance package for having taken approved leave under the Family Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq.* and in violation of the same.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff was employed as the general manager of the defendant for a little more than nine years when he went out on FMLA leave in late December of 2008 for a serious heart condition. (Compl. at ¶¶ 6-8.)  The plaintiff was provided over seven months of medical leave, more than the legally required 12 weeks of leave under the FMLA. (Compl. at ¶¶ 8-9.) In fact, the defendant has an FMLA policy that provides for employees to receive 13 weeks of leave for a serious medical condition, one week more than legally required, and the company pays employees for up to 13 weeks of leave, which is not required by the FMLA. (Ex. A at 704, comment 7 and 702 at comment 7; Ex. B at 17.)

The plaintiff's FMLA leave ended in late March or early April of 2009. (Ex. C at 55.) The plaintiff did not return to work at that time. There is some factual dispute between the parties regarding the circumstances of the plaintiff's return to work and his attempts to do so. To the undersigned, the details are not material, here. It is undisputed that the plaintiff did not, in fact, return to work, regardless of the reason and it is the defendant's position that it believed the plaintiff could not.

Notwithstanding, the defendant did not initially terminate his employment and attempted to help him with a Long Term Disability (LTD) insurance claim. (Ex. B at 21-22.) LTD was made available, at no expense to the plaintiff, by the defendant. (Ex. B at 30-33.) The plaintiff recently resolved his claim for LTD benefits with the defendant's LTD carrier and has a pending claim for disability with the Social Security Administration. (Ex. C at 12-13.)

The defendant contends that it "eventually learned that Plaintiff's employment status would not negatively impact his LTD claim and there was little else [it] could do to assist Plaintiff in that effort." (Mem. Supp. Summ. J. at 3.) The defendant additionally offers that financial conditions had begun to decline as a result of worsening economic conditions generally and specifically for the Data Publishing business. (Ex. B at 27-28, 32-33.) Accordingly, the plaintiff's employment was separated on August 1, 2009, almost 7 months after his medical leave began. *Id.* at 27, 29-30. The plaintiff requested a severance payment from the defendant at the conclusion of his employment but was not paid any.

## **APPLICABLE LAW**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The plaintiff has pled one cause of action for a violation of the FMLA. (See Compl.) He contends that the defendant refused him severance because he had taken FMLA leave. Under the FMLA, there are three possible theories of recovery: interference, retaliation, and discrimination. *See* 29 U.S.C. §§ 2614, 2615. There is some question concerning what theories the plaintiff intends here.

The Family and Medical Leave Act provides that covered employees are entitled to a total of twelve (12) work weeks of leave during any twelve (12) month period for family and health related matters, as well as a right to be restored to the position of employment held by the employee when the leave commenced, or to an equivalent position. 29 U.S.C. §§ 2612, 2614. Under the FMLA, an employer may not use the taking of leave "as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." 29 C.F.R. § 825.220(c); *Dotson v. Pfizer*, Inc., 558 F.3d 284, 294-295 (4th Cir. 2009); *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 744 (D.S.C. 2010).

The Act provides two sorts of protections. The first is for violations of an employee's *prescriptive* rights under the FMLA – known as "interference" or "entitlement" claims – arising under 29 U.S.C.A. § 2615(a)(1). That Section states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.*

The second FMLA prohibition makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Courts have classified violations under this section as violations of a "proscriptive right," also known as "retaliation" or "discrimination" claims. *Yashenko v. Harrah's NC Casino*, 446 F.3d 541, 546 (4th Cir. 2006).

The plaintiff's Complaint does not make any serious attempt to identify the specific theory – interference, discrimination, or retaliation – or the kind of right, pre- or proscriptive,

the plaintiff would assert here and, between the alternatives, only the word "discrimination" is even averred (Compl. ¶ 21). The defendant's motion for summary judgment reasonably treats the Complaint as one brought only in vindication of proscriptive rights for discrimination and retaliation. But, against all three theories, the defendant makes essentially a single rejoinder – that it took no adverse employment action against the plaintiff for which it has any legal liability. Specifically, the defendant emphasizes that the plaintiff, who claims rights in severance, had none. And, therefore, he suffered no prejudice to any legal benefit or entitlement. In response, the plaintiff protests that he has pled the full spectrum of legal theory under the FMLA, including interference.

### I.  Interference Claim

As an initial matter, the Court would reject that the Complaint or the plaintiff's arguments on summary judgment or the evidence of record speak in any claim for interferenc. 29 U.S.C. § 2615(a)(1) provides that "it shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* Additionally, upon return from FMLA leave, an employee shall "be restored by the employer to the position of employment held by the employee when the leave commenced . . . Or be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). In other words, an interference claim may be premised either on an improper denial of FMLA benefits, in the first instance, or a refusal, in the second, to return the employee to comparable work.

As to the first sort of interference claim, there is no dispute that the defendant not only provided the plaintiff with FMLA leave but paid him for the entire statutory period of 12 weeks plus an additional one. The plaintiff does not contend otherwise. As to any reinstatement claim, although the parties dispute whether the plaintiff *wanted* to return to work or not, no where in the plaintiff's legal claim, either on Complaint (see Compl. ¶¶ 12-

5

24) or at summary judgment, has he contended that he should have been reinstated. His sole complaint is that he was denied severance as a result of having taken FMLA. (Pl. Resp. at 7-9.) Accordingly, the Court does not know upon what basis the plaintiff means to proceed on any interference claim – denial or reinstatement. That claim, therefore, to the extent present in the Complaint at all, should be dismissed.

## II.     Discrimination/Retaliation Claims

The defendant also rejects that the plaintiff can create issues of fact as to any FMLA discrimination or retaliation claim. As to those claims, the plaintiff may either rely on a modified version of the *McDonnell Douglas* proof mechanism,[1] *see Yashenko*, 446 F.3d at 550-51; *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001), or make recourse to ordinary principles of proof, using direct or indirect evidence,[2] as well, *see Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996). The plaintiff has suggested that his case survives summary judgment regardless of the method of proof. (See Pl. Brief at 7-8.)

---

[1] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800-06 (1973).

[2] Although the Court has not located a Fourth Circuit decision that expressly states that a plaintiff may rely on the ordinary principles of proof in an FMLA case, it is only a logical conclusion and one consistent with the court's treatment of retaliation cases under every other related statutory scheme. *See, e.g.*, *Rhoads v. F.D.I.C.,* 257 F.3d 373 (4th Cir. 2001) (ADA); *Burns*, 96 F.3d 728 (ADEA); *Diamond v. Bea Maurer, Inc.*, 128 Fed. Appx. 968 (4th Cir. 2005) (Title VII). At least one other district court in this circuit has agreed. *See Wemmitt-Pauk v. Beech Mountain Club*, 140 F. Supp. 2d 571, 580 (W.D.N.C. 2001). Moreover, in this District, FMLA retaliation claims are analyzed in accordance with the principles used in Title VII retaliation claims. *See Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997).
     It should also be noted that in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003), other jurisdictions have permitted plaintiff's to use the mixed-motive framework to demonstrate that retaliation for taking FMLA leave was a "motivating factor" in the termination decision, even if their exist other legitimate, non-discriminatory reasons for termination, like performance*. See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).
     Regardless of the articulation, in this case, the plaintiff is not bound to make his proof through the *McDonnell Douglas* scheme exclusively, nor is he required, necessarily, to prove that the nondiscriminatory reasons for denying severance were pretext. He may use ordinary principles of proof to demonstrate that her FMLA leave was a motivating factor in the decision to deny it. *See id.*

6

The defendant would argue that notwithstanding the proof methodology employed, the plaintiff simply cannot establish the predicate offense that any adverse employment action was taken against him, a requirement of both types of claims – discrimination and retaliation. As stated, it is undisputed that the only employment action about which the plaintiff complains is the denial of severance pay when his employment ended. (Complaint at ¶ 23; Pl. Resp. 7-8.) He unequivocally does not contend that the termination itself violated any provision of the FMLA.

The defendant emphasizes, therefore, this singular detail – provision of severance payment is a gratuitous benefit to which no employee is entitled. (Ex. B Dep. at 35, 55, 56; Pl. Dep. at 108-11, 152; Ex. D at18.). Moreover, the defendant notes that there exists no independent legal requirement, statutory or otherwise, in South Carolina that severance be paid to any employee.

The plaintiff does not really disagree that severance is generally within the discretion of the defendant. *See id.* Rather, the plaintiff contends that, in this instance, that discretion was exercised, to his disadvantage, in a way not consistent with the defendant's typical course of dealing, and directly motivated by the improper consideration that he had previously taken FMLA. Specifically, the plaintiff has testified that he asked a David Armistead, general counsel and corporate secretary, about severance. (Pl. Dep. at 90.) Armistead did not immediately answer the question and then said, "[Plaintiff] had been out on FMLA for 12 weeks and that was, in essence, a severance." *Id.* In response, the plaintiff told Armistead that he did not think "FMLA could be used in lieu of severance and [that he] disagreed with it and didn't think it was right to do that." *Id.*

The plaintiff argues that whether or not the action of the defendant in denying severance was an adverse employment one is governed by the standard explained in the United States Supreme Court decision, *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In *Burlington Northern*, the United States Supreme Court articulated

7

an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citation omitted). The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id.*, an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id.* at 71.

The various circuit courts of appeal have essentially agreed that the *Burlington Northern* standard for materially adverse action should apply to the FMLA context. *See Millea v. Metro-North R. Co.*, 658 F.3d 154 (2nd Cir. 2011); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir.2008) (applying Burlington Northern anti-retaliation standard to FMLA retaliation claims); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir.2006) (same); *McArdle v. Dell Prods., L.P.*, 293 Fed. Appx. 331, 337 (5th Cir.2008) (unpublished opinion) (per curiam) (same); *DiCampli v. Korman Cmtys.*, 257 Fed. Appx. 497, 500–01 (3d Cir.2007) (unpublished opinion) (same); *Csicsmann v. Sallada*, 211 Fed. Appx. 163, 167–68 (4th Cir.2006) (unpublished opinion) (per curiam) (same). For purposes of the FMLA's anti-retaliation provision, therefore, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights.

The Court has difficulty concluding differently than that a denial of severance, under the circumstances, would likely have dissuaded a reasonable worker from exercising his FMLA rights. The plaintiff has put forward evidence that executives who separated from the company after its sale received severance (Ex. 9 at 26) and that other employees expected

that plaintiff might receive the same, *id.* at 44.  There is even some evidence that employees who voluntarily left the company were also given severance.  (Ex. 5 at 405.)  The defendant has ably distinguished the circumstances of those severance payments from the denial of the plaintiff's.  To the Court, it seems enough, however, to begin to justify submission to the jury, that in large measure severance has been paid the defendant to separating management.  Distinguishing facts might certainly impeach that claim.

The plaintiff also posits that any potential severance package would have been worth approximately $120,000 (ten months salary).  As far as the Court can tell, the plaintiff has not cited any basis for this number.  The undersigned would assume the amount calculated based on comparable packages given to other executives upon separation. But, the Court has reviewed deposition testimony and cannot find it precisely.  Regardless, whatever the amount, the benefit lost can likely be quantified to a reasonable extent and seems unlikely to be insignificant. The Court in *Burlington Northern* was concerned that its adverse employment action standard be useful to distinguish significant from trivial harms. *Burlington Northern*, 548 U.S. at 69.  Loss of a significant monetary benefit is something more than a petty slight or minor annoyance almost in spite of the exact numerical amount at issue.  *See id.* In the least, issues of fact exist as to what it might have been.  For all these reasons, the Court thinks that a reasonable person would have felt a compelling conflict between his rights in FMLA and any perceived expectation in severance, such that it would have deterred exercise of the former if he thought he might forego the latter as a result.

But, the defendant argues that such professed expectation is precisely the problem. Because the severance was entirely discretionary (Ex. B at 35, 55, 56; Pl. Dep. at 108-11, 152; Ex. D at18), the defendant contends, no expectation could have ever been reasonably had.

Some courts have agreed with the defendant's view. *See Matya v. Dexter Corp.*, 2006 WL 931870, *15 (W.D.N.Y. 2006 April 11, 2006) (citing *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F. Supp. 87, 95 (N.D.N.Y.1994). In *Matya*, the district court stated that the payment of severance pay was not a benefit the plaintiff was otherwise entitled to receive and that such benefits were a privilege rather than a right. *Id.* The court concluded, therefore, that the defendant's refusal to grant the plaintiff severance pay and benefits could not be characterized as an adverse action. *Id.* Instead, in such cases, the defendant has merely "declined to enlarge plaintiff's rights to compensation . . . and [s]uch a decision does not form the basis of a retaliation claim." *Id.*

Of course, nearly all the cases the Court has examined, including *Matya*, involve an offer of severance contingent upon some act of the plaintiff, to wit, resignation or liability waiver/release. In other words, the employee is offered severance if she will resign or if she will forfeit any future rights in claims against the company she might have. The Court has not seen any case precisely like the present where the plaintiff has not made some effective election – by not resigning or not signing a release – to forego an already made offer of severance. In this case, the plaintiff had no opportunity to choose severance over some alternative. In fact, the "benefit" which the defendant allegedly considered as some substitute for severance – 13 weeks of paid FMLA – enured to the plaintiff before he was ever even aware that receipt of it might damage his rights in any potential severance. He could not have made any informed election between them. More importantly, the FMLA, itself, exists that he would not have to.

But, not all district court's have agreed with the defendant. In fact, in this circuit at least the District Court of Maryland has found, based on *Burlington*, that denial of severance benefits is an adverse employment action. *See EEOC v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414, 418-420 (D. Md.2006) (finding retaliation can be shown by employer conditioning award of severance benefits on employee's waiver of any possible EEOC

claims and citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir.2001) (finding an adverse employment action, as part of a prima facie case of disparate treatment, when one employee received a smaller severance package than another)).

But, more critically, in the Court's experience, absolute entitlement does not seem any sort of touchstone concerning adverse employment actions. It is recognized that nearly every employment decision is imbued with business judgment. Discrimination and retaliation claims are rarely predicated on the loss of some absolute right – to wit, the termination of at-will employment, the denial of promotion, disciplinary action. These are not incidents of absolute right or entitlement. Rather, they are all circumstances where the discretion exercised, rightly and typically within the subjective bailiwick of the employer, has been improperly influenced by an illegal consideration. The adverse employment action typically involves an employment benefit to which the employee may be eligible but certainly not somehow absolutely entitled. Short of contractual obligations, which carry, in some manner of speaking, a kind of absolute force, hiring, firing, promotion, and disciplinary decisions are all substantially discretionary. Employees do not prevail in discrimination or retaliatory actions because they were entitled to the benefit, in the first instance, but because their opportunity in that benefit was made somewhat less for the presence of discrimination or retaliation. The Court may have it wrong. Certainly, other jurisdictions have viewed it differently albeit on not precisely the same facts.

And, the defendant's characterization of severance as a "gratuitous, post-employment benefit" feels a kind of overreach. Severance is not charity. And, while it may be true that the defendant had in this instance, a broader type of discretion than what might be present for other employment decisions, it is not gratuitous as in out of thin air. There are business and legal considerations for severance that benefit both parties, including the employer, and it is not a type of rote gift. Along similar lines, the defendant seems to imply that the post-employment quality of severance makes it an inappropriate basis for his claim.

At least for retaliation claims, however, the Supreme Court has made it clear that post-employment conduct of the employer is precisely within the contemplation of the relevant statutes. *See Northern Burlington*, 548 U.S. at 63-64 ("But one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the antiretaliation provision's objective would not be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace.") Thus, the denial of severance after termination is no obstacle to recovery.

In fact, for this reason some kind of pure discrimination claim in FMLA may be inapposite. The Court would treat the matter as one of semantics, however. The plaintiff has a claim in proscriptive FMLA rights, whether styled as discrimination or retaliation or both. While a clarification in jury instruction might be necessary, the Court does not think that summary judgment demands foreclosure of the claims in any particular way here.

To close the loop on the legal demands of the plaintiff's case, the Court would consider the alleged statement that FMLA was provided in lieu of severance (Pl. Dep. at 90), as direct evidence sufficient to survive summary judgment and proceed to trial. As is commonly understood, direct evidence is defined as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir.2006) (internal quotations omitted). The defendant has not specifically challenged that claim – that the evidence is direct. And, concerning *McDonnell Douglas*, the defendant has only challenged the plaintiff's ability, at the *prima facie case* stage, to establish adverse

12

employment action.[3]  Because, the Court finds issues of fact as to that element, the defendant's argument does not prevail and no other grounds for dismissal are in play.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 20] be GRANTED as to any FMLA interference claim of the plaintiff and DENIED as to any FMLA retaliation/discrimination claims pending against it.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 10, 2012
Charleston, South Carolina

---

[3] Under *McDonnell Douglas*, a plaintiff may make out a *prima facie* case of retaliation by establishing that (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *Dodgens v. The Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997). The latter of these elements may in some cases be demonstrated by the temporal proximity between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 661-62 (W.D.N.C. 2005); *Blankenship v. Buchanon Gen'l Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce evidence of a "legitimate, non-discriminatory reason" for the termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant meets this burden, then the plaintiff must show that the explanation for the decision to terminate him was, in fact, a pretext for intentional retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).